UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   v.

PAUL FISHBEIN,

      Defendant.

**21 Cr. 296 (PAC)**

## **GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND RELEASE GRAND JURY TRANSCRIPTS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Sarah L. Kushner
Assistant United States Attorney
   *Of Counsel*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

   I. The Indictment Properly Alleges The Elements Of The Charged Offenses ........................... 4

     A. Applicable Law ..................................................................................................... 4

     B. Discussion ............................................................................................................. 5

   II. Counts One And Two Are Not Barred By The Statute Of Limitations .............................. 11

     A. Applicable Law ................................................................................................... 11

     B. Discussion ........................................................................................................... 11

   III. The Defendant's Request For Disclosure Of The Grand Jury Minutes Should Be Denied 13

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) .......................................................... 14

*Boyce Motor Lines v. United States*, 342 U.S. 337 (1952) ............................................................ 5

*Costello v. United States*, 350 U.S. 359 (1956) ......................................................................... 15

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979) ................................................ 13

*Hamling v. United States*, 418 U.S. 87 (1974) .......................................................................... 13

*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959) ............................................ 13

*Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500 (S.D.N.Y. 2005) ............................ 14

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ................................................................ 5

*United States v. Avenatti*, 432 F. Supp. 3d 354 (S.D.N.Y. 2020) ................................................ 5

*United States v. Berger*, 22 F. Supp. 2d 145 (S.D.N.Y. 1998) .................................................... 12

*United States v. Binday*, 804 F.3d 558 (2d Cir. 2015) .......................................................... 6, 7, 8

*United States v. Bruno*, 159 F. Supp. 3d 311 (E.D.N.Y. 2016) .................................................. 15

*United States v. Calandra*, 414 U.S. 338 (1974) ...................................................................... 15

*United States v. Campbell*, No. 12 Cr. 6142 (FPG), 2013 WL 3805666 (W.D.N.Y. July 19, 2013)

............................................................................................................................................. 10

*United States v. Carter*, No. 04 Cr. 594 (NRB),  2005 WL 180914 (S.D.N.Y. Jan. 25, 2005).... 13

*United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310 (S.D.N.Y. Sept. 24, 2009)..... 11

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) ............................................................. 4

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ......................................................... 5

United States v. Doud, No. 19 Cr. 285 (GBD), 2022 WL 47233 (S.D.N.Y. Jan. 5, 2022) ............ 4

*United States v. Dunn*, No. 05 Cr. 127 (KMK), 2005 WL 1705303 (S.D.N.Y. July 19, 2005) .. 14, 15

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), *cert. denied*, 507 U.S. 998 (1993)............ 12

*United States v. Goldberg*, 756 F.2d 949 (2d Cir. 1985) ..................................................... 5

*United States v. Grady*, 544 F.2d 598 (2d Cir. 1976) ................................................... 11

*United States v. Guillen*, No. 17 Cr. 512 (KMW), 2018 WL 5831318 (S.D.N.Y. Nov. 7, 2018) 15

*United States v. Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810 (S.D.N.Y. Nov. 14, 2007) ........................................................................................................... 11

*United States v. Henry*, 861 F. Supp. 1190 (S.D.N.Y. 1994) ..................................... 10

*United States v. Laster*, No. 06 Cr. 1064 (JFK), 2007 WL 3070599 (S.D.N.Y. Oct. 19, 2007) . 14, 15

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001)..................................... 11

*United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) ................................... 6, 8, 9

*United States v. Novak*, 443 F.3d 150 (2d Cir. 2006) ............................................ 6, 7

*United States v. Proctor & Gamble Co.*, 356 U.S. 677 (1958)....................................... 13

*United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970)............................. 6, 7

*United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998)............................................. 8

*United States v. Schlegel*, 687 Fed. Appx. 26 (2d Cir. 2017) .................................... 13

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) ............................................ 6, 10

*United States v. Smith*, 985 F. Supp. 2d 547 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 Fed. Appx 23 (2d Cir. 2016) ............................................................... 4

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ..................................... 4, 5

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ........................................ 4, 6

*United States v. Sugar*, 606 F. Supp. 1134 (S.D.N.Y. 1985) ........................................................ 16

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990) ................................................................... 13

*United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994) ......................................................... 10

*United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017) .................................................................... 6

*United States v. Wedd*, 993 F.3d 104 (2d Cir. 2021) .................................................................... 4

*United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008) ................................................................ 15

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Paul Fishbein's pretrial motion (the "Motion") to dismiss the Indictment and for grand jury minutes. The defendant has moved (1) to dismiss the Indictment on the grounds that the wire fraud and mail fraud offenses charged in Counts One and Two of the Indictment are insufficient and time barred and (2) for disclosure of the grand jury minutes in this case. The Motion should be denied. First, the Indictment properly alleges wire and mail fraud and adequately informs the defendant of the charges against him in a manner that allows him to prepare his defense and to avoid double jeopardy, which is all that the Constitution and the Federal Rules of Criminal Procedure require. Moreover, Counts One and Two are not time barred, as they cover conduct that occurred within the last five years. Finally, the Motion fails to meet the high burden required to override the presumptive secrecy of grand jury materials.

## FACTUAL BACKGROUND

On April 2, 2021, the defendant was charged in a 16-page complaint (Dkt. No. 1 ) with one count of wire fraud, one count of mail fraud, and one count of theft of government funds, for defrauding rental assistance programs administered by New York City agencies, and one count of Medicaid fraud. A warrant for his arrest was issued that same day. On April 6, 2021, the defendant was arrested, presented before United States Magistrate Judge Stewart D. Aaron, and released on strict bail conditions.

On May 4, 2021, a grand jury returned a four-count Indictment charging the defendant with (1) wire fraud in violation of Title 18, United States Code, Sections 1343 and 2 (Count One), (2) mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2 (Count Two), and (3) theft of government funds, in violation of Title 18, United States Code, Section 641 (Count Three),

in connection with the rental assistance program fraud, and (4) Medicaid fraud, in violation of Title 18, United States Code, Section 1347.  The case was assigned to this Court.

Regarding the rental assistance program fraud, the defendant is alleged to have defrauded rental assistance programs administered by New York City's Human Resources Administration ("HRA"), New York City's Housing Preservation & Development ("HPD"), and the New York City Housing Authority ("NYCHA," and with HRA and HPD, the "Agencies") by falsely claiming to be the owner and landlord of 20 different properties (the "Properties") in New York City based on forged deeds that purported to transfer the Properties from legitimate owners to the defendant.  As alleged in the Complaint:  From at least in or about 2013, to at least in or about April 2021, when he was arrested in this case, the defendant rented out the Properties to homeless and low/moderate-income families through the Agencies' programs, and collected payments from the Agencies as the purported owner and landlord of the Properties.  (*Id.* ¶¶ 10, 14, 20(a), 25(a), 26, 31, 32, 33(a)-(c), 34.)  In addition, the defendant falsely represented to HRA that he used a broker to rent out the Properties, and collected and kept for himself certain broker's fees that HRA issued for the Properties.  (*Id.* ¶¶ 11, 20(b)-(c), 25(b)-(c), 33(d).)  The defendant also took advantage of the homeless and in-need families who were placed in the Properties.  For example, as alleged in the Complaint, some of the Properties that the defendant rented out were dilapidated and uninhabitable.  (*See id.* ¶ 12.)  Moreover, as alleged in the Complaint, even though he was not the lawful owner of the Properties, the defendant often evicted families shortly after they were placed in the Properties.  (*See id.*)  Through this scheme, the defendant fraudulently obtained more than $1.5 million from HRA, HPD, and NYCHA, including more than $270,000 in federal funds.  (*Id.* ¶ 13.)

The defendant is also charged with committing Medicaid fraud. Medicaid is a health insurance program for, among others, low-income adults. The program is funded jointly by states and the federal government. (*See id.* ¶¶ 37(a)-(i).) As alleged in the Complaint, from at least in or about 2014, to at least in or about April 2021, the defendant received Medicaid benefits based on false representations he made to HRA that he was financially eligible for Medicaid. (*See id.* ¶ 38(a).) During that time, the defendant represented to HRA that he worked at a company where his total income was approximately $150 a week—that is, approximately $600 a month or approximately $7,200 a year. (*Id.* ¶ 38(b).) In reality, as alleged in the Complaint, the defendant made hundreds of thousands of dollars each year, including by stealing money from the Agencies by falsely claiming to be the owner of the Properties in order to collect landlord payments from the Agencies, thus far exceeding the income and asset limitations for Medicaid eligibility. (*Id.* ¶¶ 39(a)-(h), 41.) By lying about his income and assets, the defendant received at least approximately $47,621 in Medicaid benefits to which he was not entitled. (*Id.* ¶ 42.)

To date, the Government has made nine productions, including more than 146,000 pages in discovery as well as clearly marked files for each of the 20 Properties.

## ARGUMENT

The defendant is not entitled to any of the relief that he seeks. First, the Indictment sufficiently alleges the charged offenses, and the defendant has otherwise been adequately apprised of the charges against him, including through the Government's correspondence, discovery, and pre-trial disclosures, all of which provide the defendant with ample specificity, and are more than sufficient for the defendant to understand the charges and prepare for trial. Second, the offenses alleged in Counts One and Two of the Indictment are not barred by the statute of limitations. Third, the defendant's request for disclosure of the grand jury minutes violates the grand jury's

3

"presumption of regularity" and should be denied because the defendant has not demonstrated any particularized need for the Court or the defendant to review the minutes.

## I.  The Indictment Properly Alleges The Elements Of The Charged Offenses

### A.    Applicable Law

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Doud*, No. 19 Cr. 285 (GBD), 2022 WL 47233, at *2 (S.D.N.Y. Jan. 5, 2022) (quoting *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 Fed. Appx 23 (2d Cir. 2016)).  To satisfy the pleading requirements of Rule 7(c)(1), "an indictment need do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (citation and internal quotation marks omitted); *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (noting that an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime").  "An indictment is sufficient as long as it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,' and (2) 'enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Dawkins*, 999 F.3d at 779 (quoting *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)).

Even in cases involving very bare-bones charges, courts will not dismiss the indictment absent a showing of prejudice. *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).  Where a defendant has been given sufficient notice of the charges against him by means of, for example,

discovery materials, there will be no prejudice, and the indictment should stand. *See, e.g.*, *United States v. De La Pava*, 268 F.3d 157, 162-63 (2d Cir. 2001).

Before trial, "the allegations of [an] indictment must be taken as true," *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952), as "[t]he sufficiency of the evidence" is not a matter that may be "appropriately addressed on a pretrial motion to dismiss an indictment," *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998); *see also United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985) (in reviewing the facial sufficiency of an indictment, "[c]ontrary assertions of fact by the defendants will not be considered"). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Avenatti*, 432 F. Supp. 3d 354, 360 (S.D.N.Y. 2020) (quoting *De La Pava*, 268 F.3d at 165); *see id.* at 360-361 ("[D]ismissal of charges is an 'extreme sanction,' . . . that has been upheld 'only in very limited and extreme circumstances,' and should be 'reserved for the truly extreme cases,' 'especially where serious criminal conduct is involved.'" (internal citations omitted)).

## B.    Discussion

Here, the defendant has been adequately apprised of the charges against him. Dismissal of the Indictment is not warranted, and indeed, would be improper. As required by Fed. R. Crim. P. 7(c), Counts One and Two of the Indictment track the relevant statutory language, state the approximate time and place of the crime, and thereby provide adequate notice to the defendant of the charges against him. *See Stavroulakis*, 952 F.2d at 693. This alone is fatal to the defendant's claim. Moreover, while the Indictment is sufficient on its own terms to satisfy the requirements of Rule 7(c) and the Constitution, the Court may also "look to the record as a whole" in determining whether the defendant was sufficiently on notice of the charges against him and "protected against

the risk of double jeopardy." *Stringer*, 730 F.3d at 124-25. The detailed Complaint and extensive discovery in this case ensure that the defendant will be sufficiently informed to meet the charges he faces. The defendant's assertion that the Indictment insufficiently alleges Counts One and Two is therefore belied by the plain terms of the Indictment, and the additional detailed notice of the charges against him by means of the discovery and other information already provided to him in this case.

The defendant nevertheless argues that Counts One and Two are insufficient because they "fail[] to allege": (1) that the defendant "intended to harm the government agencies," and (2) the "time and location when the defendant allegedly mailed and/or wired documents claiming to be the owner of the properties." (Motion at 7.) Both arguments fail.

The essential elements of the mail fraud and wire fraud statutes are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme. *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015).[1] "It is not required that the victims of the scheme in fact suffered harm, but the government must, at a minimum, prove that [a] defendant[] contemplated some actual harm or injury to [his] victims." *Id.* (internal citation and quotation marks omitted). Here, in arguing that the Government has failed to allege intent to harm, the defendant relies on a line of cases that is completely inapplicable here. (*See* Motion at 7-11 (citing *Binday*; *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007); *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006); *United States v. Mittelstaedt*, 31 F.3d 1208, 1218 (2d Cir. 1994); and *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970)). Those cases

---

[1] "Because the mail fraud and the wire fraud statutes use the same relevant language," courts "analyze them the same way." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017).

were about fraud charges based on a "right to control" theory of harm and concerned contractual relationships where the alleged victims still received the benefit of their bargain, despite any arguably fraudulent misrepresentations made by the defendants. *See, e.g.*, *Binday*, 804 F.3d at 570 (explaining that the Second Circuit has "recognized that the property interests protected by the mail and wire fraud statutes include the interest of a victim in controlling his or her own assets" and that "a cognizable harm" under those statutes occur "where the defendant's scheme denies the victim the right to control its assets by depriving [the victim] of information necessary to make discretionary economic decisions" (internal citations, quotation marks, and brackets omitted)); *Novak*, 443 F.3d at 156-57 (finding that the evidence was insufficient to show the requisite intent to harm under the mail fraud statute because the contractors—the alleged victims in the case—received all they bargained for, and the defendant's conduct in receiving kickbacks from individuals who received labor union payments from the contractors did not affect an essential element of that bargain); *id.* at 159 (reasoning that "[a]n intent to harm a party to a transaction cannot be found where the evidence merely indicates that the services contracted for were dishonestly completed"); *Regent Office Supply Co.*, 421 F.2d at 1182 ("[Defendant] did not attempt to deceive their prospective customers with respect to the bargain they were offering; rather, they gave a false reason for being able to offer the bargain. There was no substitution of merchandise contrary to the customer's understanding of the offer, and no 'quid pro quo of equal value' exchanged for the customer's money which did not meet his reasonable expectations"). That is not the case here.

Here, the defendant is charged with stealing money from government agencies, not "den[ying] the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions." *United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d

7

Cir. 1998).  In other words, the Government is alleging straightforward theft of government funds based on material misrepresentations that the defendant made to the Agencies in which he repeatedly claimed that he was the owner and landlord of Properties so that he could collect rental assistance money from the Agencies.  The instant case is not based on a contractual relationship or alleged deprivation of a victim's rights to control its assets.  Accordingly, *Binday*, *Shellef*, *Novak*, *Mittelstaedt*, and *Regent Office Supply Co.*, do not help the defendant.

Moreover, the cases on which the defendant relies concerned post-trial motions, and therefore were not similarly situated to the procedural posture in this case.  In *Binday*, for example, the defendants, following a jury trial, "challenge[d] only the sufficiency of the evidence to establish the allegations made in the indictment . . . .  They thus implicitly or explicitly concede[d] that they [were] raising what is at its heart a factual question, which the jury resolved against them, on the ground that the evidence was insufficient to permit a rational jury to reach the verdict that the jury [t]here reached."  804 F.3d at 571.  And there, the Second Circuit *rejected* the defendants' argument that the government failed to prove that the defendants contemplated harm to the victims and affirmed the judgments of conviction.  *Id.* at 565.

In *United States v. Mittelstaedt*, the defendant argued that his mail fraud convictions should be reversed because "the district court failed to charge the jury that, under the mail fraud statute, concealed information is only material if it has an impact on the transaction," and because at the time, the "'honest services' of a government employee was not 'money or property' within the meaning of the mail fraud statute."  31 F.3d at 1210.  The indictment charged the defendant with multiple mail fraud counts based on an alleged "scheme" in which the defendant "concealed [his] ownership interest in . . . property, with the objectives of depriving [a village] of '[his] dishonest services[,] . . . the right to material information concerning the expenditure of public monies[,] . .

8

. and confidential business information concerning the village's plan to build a village parking lot,' as well as obtaining 'more than $750,000 in profit from the sale' of the property." *Id.* at 1216. The charges were based on conduct that preceded Congress's enactment of Title 18, United States Code, Section 1346, which "amended the mail and wire fraud statutes to cover schemes" relating to the deprivation of "honest services." *Id.* The defendant argued that the jury instruction that "the right to material information concerning the expenditure of public monies, is a property right, intangible though it is," should have also informed the jury that "the information withheld must have placed the Village at an *economic* disadvantage." *Id.* at 1216-1217. Without that added language, the defendant argued, the jury could have convicted the defendant under the mail fraud statute on nothing more than a breach of fiduciary duty. The Circuit agreed with the defendant, finding that "[w]here an individual standing in a fiduciary relation to another conceals material information that the fiduciary is legally obliged to disclose, that non-disclosure does not give rise to mail fraud liability unless the omission can or does result in some tangible harm." *Id.* at 1217. Accordingly, the Second Circuit found that the jury instruction was erroneous because it "permitted the jury to convict [the defendant] for nothing other than breach of fiduciary duty." *Id.* at 1218. That is not the situation here. This case does not involve a fiduciary relationship or any allegation that the defendant deprived the Agencies of honest services or withheld information that simply placed the Agencies at an economic disadvantage.

In *Shellef*, the Second Circuit considered the defendant's appeal from a jury verdict on the ground that the government improperly joined certain criminal charges against the defendant. The Circuit found that joinder was improper under Federal Rule of Criminal Procedure 8, and then expressly stated that, "in light of [its] disposition of the question of joinder," the court "need not decide" the several other issues raised on appeal, including "the legal sufficiency of the wire fraud

9

and conspiracy indictments." 507 F.3d at 88. The court, however, nevertheless discussed the defendant's challenge to the sufficiency of the Indictment, "to guide the district court on retrial." *Id.* That challenge concerned the "right to control theory," whereby the government alleged that the defendant fraudulently induced a company to sell additional amounts of its product that it would not have sold but for the defendant's alleged misrepresentation, and a tax liability theory. *See id.* at 107. Neither theory is applicable here.

The defendant also incorrectly argues that, to sufficiently allege wire fraud and mail fraud, the Government must allege the "time and location when the defendant allegedly mailed and/or wired documents claiming to be the owner of the properties." (Motion at 7.) But whether and when the defendant mailed and/or wired documents in which he claimed to be the owner of the Properties are simply not elements of the charged offenses. In any event, "the specific transactions or documents which are at the heart of an indictment need not be specified so long as the indictment apprises the defendant of the elements of the charge against him," as it does here. *United States v. Upton*, 856 F. Supp. 727, 740 (E.D.N.Y. 1994). Courts in this Circuit have rejected the claim that counts charging a scheme to defraud, like Counts One and Two of the Indictment, must be dismissed for failure to identify the specific communications or representations at issue. *See, e.g.*, *United States v. Campbell*, No. 12 Cr. 6142 (FPG), 2013 WL 3805666, at *4 (W.D.N.Y. July 19, 2013) ("This Court is unaware of any authority to suggest that an indictment is deficient because it does not identify a mailing or wire communication associated with each targeted victim of the conspiracy."); *Upton*, 856 F. Supp. at 740 (same).[2]

_____

[2] In the context of considering a motion for a bill of particulars, courts routinely deny such motions demanding that the government identify "all acts" the defendant is alleged to have undertaken as part of the crime charged, *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (noting

10

The defendant's Motion to dismiss the Indictment should be denied.

## II.  Counts One And Two Are Not Barred By The Statute Of Limitations

### A.  Applicable Law

The statute of limitations for the offenses charged in Counts One and Two of the Indictment is five years.  *See* 18 U.S.C. § 3282.  Once an indictment is timely brought, "the statute of limitations is tolled as to the charges contained in that indictment."  *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976).  Courts have held that such a rule makes practical sense because, through the filing of a timely brought indictment, the defendants are put on notice "that that they will be called to account for their activities and should prepare a defense."  *Id.*  After a timely indictment is brought, the statute of limitations begins to run again on those charges only if the indictment is dismissed.  *Id.*

### B.  Discussion

The defendant argues that the Indictment is "impermissibly vague and alleges a continuous set of mail and wire fraud transactions . . . ranging from 2013 until the day of the indictment (May 2021)," and that "[t]o be timely," Counts One and Two "must allege conduct that occurred on or after April, 2016."  (Motion at 12.)  The defendant argues, therefore, that the Court must "dismiss (and/or strike) allegations of mail and wire fraud that occurred on or before April 2016."  That is wrong.

---

that this demand "fall[s] clearly outside the ambit of a bill of particulars"), including wires or transactions alleged to be a part of a criminal scheme, *see, e.g., United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310, at *3-4 (S.D.N.Y. Sept. 24, 2009); *United States v. Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810, at *4-5 (S.D.N.Y. Nov. 14, 2007); *see also United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001).

The statute of limitations period for mail and wire fraud is five years, pursuant to 18 U.S.C. § 3282. "That period runs from the date of the charged mailing, regardless of whether the defendants' actions concerning the alleged scheme to defraud occurred before the statutory period." *United States v. Berger*, 22 F. Supp. 2d 145, 153 (S.D.N.Y. 1998) (citing *United States v. Eisen*, 974 F.2d 246, 263 (2d Cir. 1992), *cert. denied*, 507 U.S. 998 (1993)). As stated in the detailed Complaint, the Government alleges that the defendant engaged in a mail fraud scheme that continued up until the defendant's arrest in this case in April 2021; that as part of the scheme, the defendant, falsely claiming to be the landlord of the Properties, received rent checks from HPD; and that it was HPD's practice to "print[] and mail[]" such checks "to a landlord from an office in New York, New York." (Dkt. No. 1 ¶ 8(f).) The Complaint further alleges that the defendant received from HPD tens of thousands of dollars for at least one of the Properties from at least in or about 2014 to at least in or about "the present," that is, in or about April 2021. (*Id.* ¶ 34.) As for the wire fraud charge, the Complaint alleges that the defendant and the Agencies "communicated about the Properties via email during the relevant time period," that is, between 2013 and 2021, which includes the five-year limitations period. (*Id.* ¶ 36.) Accordingly, as alleged, the predicate mailing(s) and wire(s) occurred within the five-year period of the Indictment's filing.

In any event, the defendant's "challenge to the Indictment is premature." *Berger*, 22 F. Supp. 2d at 153. If the Government fails to prove at trial that any of the mailings or wires occurred within the limitations period, the defendant can renew his motion. *See id.*

## III. The Defendant's Request For Disclosure Of The Grand Jury Minutes Should Be Denied

### A. Applicable Law

The proper functioning of the grand jury system depends on the secrecy of grand jury proceedings. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). The "secrecy of grand jury proceedings is fundamental to our criminal justice system." *United States v. Carter*, No. 04 Cr. 594 (NRB), 2005 WL 180914, at *5 (S.D.N.Y. Jan. 25, 2005) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). Additionally, grand jury proceedings are afforded a strong presumption of regularity. *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974). An exception to the rule of secrecy is made for disclosure of grand jury materials "at the request of the defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

To obtain disclosure of grand jury materials, the defendant must demonstrate a particularized need that outweighs the need for grand jury secrecy. *See United States v. Schlegel*, 687 Fed. Appx. 26, 30 (2d Cir. 2017); *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) ("The burden . . . is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy."). Review of grand jury materials is "rarely permitted without specific factual allegations of government misconduct . . . with respect to grand jury proceedings." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (overruled on other grounds); *see also Carter*, 2005 WL 180914, at *5 ("Such review is rarely granted without specific factual allegations of government misconduct, . . . and unsupported suspicions of grand jury abuse are not sufficient to justify disclosure of grand jury minutes. . . . This standard applies to *in camera* review of grand jury proceedings as well as disclosure to parties." (internal citations and quotation marks omitted)). The dismissal of an indictment is warranted only in exceptional

circumstances, generally in cases in which "extreme acts of prosecutorial misconduct" have been demonstrated. *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 514 (S.D.N.Y. 2005). Furthermore, as the Supreme Court has explained, an indictment valid on its face is not subject to challenge based on the sufficiency of the evidence presented to grand jurors. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988). This standard applies to both production and *in camera* inspection of grand jury materials. *See United States v. Laster*, No. 06 Cr. 1064 (JFK), 2007 WL 3070599, at *1 (S.D.N.Y. Oct. 19, 2007).

### B.    Discussion

Here, the defendant acknowledges how high the bar is in seeking disclosure of grand jury minutes. (*See* Motion at 12.) He has not shown, and cannot show, a "particularized need" for the minutes, nor can he otherwise meet that exacting standard. His request for disclosure must be denied.

The defendant merely argues that he "needs the minutes of the Grand Jury Proceedings" in order to "support [his] motion to dismiss the indictment for lack of evidence and/or material misrepresentations made by any of the witnesses of the Government," and claims that his "ability to defend against alleged falsities in this case outweighs the government's strong interest in secrecy." (Motion at 13, 14.) The defendant's argument implies that simply alleging in conclusory terms that an indictment is based on insufficient or incompetent evidence satisfies the heavy burden required to disclose grand jury minutes. "[A] facially valid indictment," however, "is not subject to a challenge that the grand jury acted on inadequate or incompetent evidence." *United States v. Dunn*, No. 05 Cr. 127 (KMK), 2005 WL 1705303 at *3 (S.D.N.Y. July 19, 2005). Here, as discussed above, the Indictment tracks the language of the relevant statutes, and includes the approximate time and place of the defendant's alleged criminal activity. The Indictment is

therefore facially valid.  *See United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008).  The defendant's request is a pure fishing expedition, without any proposed theory of impropriety, let alone "concrete allegations of Government misconduct."  *United States v. Bruno*, 159 F. Supp. 3d 311, 322 (E.D.N.Y. 2016).  Such "general and unsubstantiated assertions are insufficient to meet the stringent standard . . . that a party must show a particularized need for [grand jury] materials."  *Dunn*, 2005 WL 1705303, at \*3 (denying request for *in camera* review of grand jury minutes when defendant argued "that there must have been some improper conduct before the grand jury because, based on the evidence known to [the defendant]'s counsel, the grand jury could not have properly indicted [the defendant]"); *see also United States v. Calandra*, 414 U.S. 338, 345 (1974).

A defendant's unsupported view that abuses may have occurred in the grand jury system is insufficient to overcome the presumption of regularity of the grand jury proceedings.  *See Laster*, 2007 WL 3070599 at \*2 ("Speculation regarding the possible insufficiency of evidence presented to the grand jury does not warrant the disclosure of the grand jury materials.").  Rather, the defendant must make "specific factual allegations of government misconduct," *United States v. Guillen*, No. 17 Cr. 512 (KMW), 2018 WL 5831318, at \*7 (S.D.N.Y. Nov. 7, 2018), which the defendant has not done in this case.  His argument that he needs the minutes to support his claim of "lack of evidence and/or material misrepresentations made by any of the witnesses of the Government" (Motion at 13) is circular and unquestionably falls short of establishing a "particularized need."[3]

---

[3] The defendant also claims that "[t]o date, the discovery the Government produced to Defendants contained no evidence that would link Fishbein in any way to defrauding the state or federal housing authority in this case." (Motion at 13.)  The law is well-settled, however, that courts do not review the sufficiency of the evidence presented to a federal grand jury.  *See Costello v. United States*, 350 U.S. 359, 363-64 (1956); *see also United States v. Sugar*, 606 F. Supp. 1134, 1144

Accordingly, the defendant's request to review grand jury materials, or for the Court's *in camera* review of such materials, should be denied.

## CONCLUSION

For the reasons set forth above, the defendant's Motion should be denied.

Dated: New York, New York
       March 11, 2022

<div style="margin-left: 50%;">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
    Sarah L. Kushner
    Assistant United States Attorney
    Tel.: 212-637-2676

</div>

---

(S.D.N.Y. 1985) ("[S]ince the facially valid indictment was returned by a properly constituted and unbiased grand jury, and no particularized need has been shown, the Court will neither review the grand jury minutes nor disclose them to the defendants for the purpose of testing the sufficiency of the evidence before the grand jury, and will not dismiss the indictment on this ground.").