UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                     :

UNITED STATES OF AMERICA,     :      S1 21 Cr. 296 (PAC)

                                       :

        *-against-*             :      **OPINION & ORDER**

PAUL FISHBEIN,                :

                *Defendant.*    :

-------------------------------------------------------X

After an eight-day trial and two days of deliberations, a jury convicted Paul Fishbein ("Fishbein") on all five counts arising out of his schemes to defraud New York City agencies ("the Agencies") of rental subsidy payments, brokers' fees, and Medicaid benefits. Fishbein now renews his motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Having reviewed the parties' arguments and carefully considered the underlying record, the Court **DENIES** Fishbein's motions.

## BACKGROUND

In May 2021, Fishbein was charged in a four-count indictment. Indictment, ECF No. 11. On March 10, 2023, Fishbein was charged in a superseding indictment ("Superseding Indictment") on five counts: (1) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 ("Count One"); (2) mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 ("Count Two"); (3) theft of government funds, in violation of 18 U.S.C. §§ 641 and 2 ("Count Three"); (4) aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2 ("Count Four"); and (5) health care fraud, in violation of 18 U.S.C. §§ 1347 and 2 ("Count Five"). The Superseding Indictment alleged that Fishbein falsely held

himself out as the owner and landlord of several rental properties (the "Properties"[1]) to rent them out and collect rental subsidy payments—including federal government funds—from the Agencies through rental assistance programs.  The assistance programs were intended to facilitate the movement of homeless families out of the city's shelter system into more permanent rental housing.  According to the Government, Fishbein knew or should have known that the deeds he submitted as proof of ownership of the Properties—deeds purporting to "sell" the Properties to him—were fraudulent.  The Superseding Indictment likewise alleged that Fishbein submitted claims for brokers' fees payments in connection with renting out the Properties, despite not actually using a broker, and that he used the name of a licensed broker without her permission to collect the fees.  Finally, the Superseding Indictment charged that Fishbein undervalued his income—including by omitting the money he received through the Properties—on his Medicaid paperwork to receive Medicaid benefits.

On February 10, 2022, Fishbein moved to dismiss the Indictment.  The Court denied the motion on April 21, 2022.  *See United States v. Fishbein* (*"Fishbein I"*), 21-cr-296 (PAC), 2022 WL 1188424 (S.D.N.Y. Apr. 21, 2022).  On March 6, 2023, Fishbein moved to sever Counts One through Four of the Superseding Indictment from Count Five.  The Court likewise denied the motion on March 31, 2023.  *See United States v. Fishbein* (*"Fishbein II"*), S1 21 Cr. 296 (PAC), 2023 WL 2734428 (S.D.N.Y. Mar. 31, 2023).

Fishbein maintained his innocence and proceeded to trial, which began on April 17, 2023. In its case-in-chief, the Government called nearly a dozen witnesses and introduced almost two

---

[1] The Government at trial focused on three different Properties, located at 608 Van Buren Street and 551 Liberty Avenue in Brooklyn and 24-30 Beach Channel Drive in Queens, for the rental subsidy payments.  The Court likewise referred to two of these Properties and several additional properties regarding the brokers' fee payments.  The Court refers to them collectively and individually as the Properties for ease of reference.

2

hundred exhibits, including, *inter alia*, rental application packets, brokers' fee request forms, deeds and related property transfer documents, bank records, and emails. The witnesses included representatives from the Agencies;[2] several true owners of the Properties; notaries whose signatures were forged on the deeds "transferring" ownership to Fishbein; and former tenants of the Properties. The jury also heard testimony from Erica Yitzhak, Fishbein's former lawyer and occasional real estate broker, whose name Fishbein allegedly used to fraudulently obtain brokers' fees.

Fishbein only called one witness in his defense: himself. Over the course of two days of testimony, Fishbein admitted he received the money from the Agencies, but placed blame entirely for any misdoings on a variety of other individuals not on trial. The Government presented one rebuttal witness before closing arguments concluded on April 26, 2023.

At the close of the Government's case-in-chief, Fishbein moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the Court denied. *See* Trial Tr. at 684–88.[3] After deliberating for approximately a day and a half, the jury found Fishbein guilty on all five counts. *See* Jury Verdict, ECF No. 120.

Fishbein now renews his Rule 29 motion and, alternatively, moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. Fishbein contends that the evidence presented at trial was insufficient, as a matter of law, to sustain his conviction on Counts One through Four and that the Court erred in (1) rejecting Fishbein's argument that the Government constructively amended

---

[2] Specifically, Dwana Abraham, assistant deputy commissioner of the New York City Human Resources Administration ("HRA"); Roeland Kim, chief of staff in the division of tenant resources in the New York City Department of Housing Preservation and Development ("HPD"); and Bernadette Brown, divisional director of client services at HRA.

[3] The transcript in this case is docketed at several numbers. For convenience, the Court refers simply to the "trial transcript" regardless of the docket number of the particular excerpt referenced.

the Superseding Indictment during its closing argument; (2) denying his pre-trial motion to sever

Counts One through Four from Count Five; (3) preventing Fishbein from arguing two purported

"defenses;" and (4) curtailing his cross-examination of two Government witnesses.

## DISCUSSION

### I.    Rule 29 Motion

#### A.    Legal Standard

Rule 29 of the Federal Rules of Criminal Procedure provides that a judgment of acquittal

must be entered for "any offense for which the evidence is insufficient to sustain a conviction."

Fed. R. Crim. P. 29.  However, a defendant seeking a judgment of acquittal bears a "heavy burden."

*United States v. Jones*, 965 F.3d 190, 193 (2d Cir. 2020) (internal quotation marks omitted).  The

Court "must view the evidence in a light that is most favorable to the government, and with all

reasonable inferences resolved in favor of the government."  *United States v. Anderson*, 747 F.3d

51, 60 (2d Cir. 2014) (cleaned up).  "The question is not whether th[e] Court believes that the

evidence at trial established guilt beyond a reasonable doubt, but rather, whether *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United*

*States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) (cleaned up) (emphasis in

original) (alteration added).  A judgment of acquittal can therefore "be entered only if the evidence

that the defendant committed the crime alleged is nonexistent or so meager" as to entirely preclude

a rational guilty verdict. *Jones*, 965 F.3d at 193.

In assessing a sufficiency challenge, the Court reviews the evidence "in its totality, not in

isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008), "as each fact may gain color

from others," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999).  The Government

"need not negate every theory of innocence" and "may prove its case entirely by circumstantial

evidence so long as guilt is established beyond a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 63–64 (2d Cir. 2002). However, "[w]here the Government asks the jury to find an element of the crime through inference, the jury may not be permitted to conjecture or to conclude upon pure speculation or from passion, prejudice or sympathy." *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016) (cleaned up). Rather, those inferences must be "sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (quotations omitted). Ultimately though, "the court must be careful not to usurp the role of the jury," and may not "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) (cleaned up). In a close case, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (cleaned up).

B.  Analysis

Based on the testimony and evidence received at trial, a rational jury considering the totality of the evidence could conclude beyond a reasonable doubt that Fishbein committed each and every element of Counts One through Four.

> *i.  Counts One and Two[4]*

---

[4] Counts One and Two are addressed together because the mail and wire fraud statutes are identical in all relevant respects. *See Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004). To the extent the Court relies on cases addressing health care fraud under 18 U.S.C. § 1347, this case law is regularly construed when interpreting wire and mail fraud statutes. *See United States v. Pierre*, 22 Cr. 19 (PGG), 2023 WL 4493511, at * 2 (S.D.N.Y. July 12, 2023) (citing *United States v. Mermelstein*, 487 F. Supp. 2d 242, 253 n.2 (E.D.N.Y. 2007) (collecting cases)).

Fishbein challenges the sufficiency of the evidence as to Counts One and Two. In doing so, he advances two lines of argument: (1) that the Government failed to demonstrate that he knowingly misrepresented himself as the owner of the Properties, and (2) that the Government failed to prove his fraudulent intent. The Court rejects both arguments. Viewing the evidence in the light most favorable to the Government and drawing all inferences in its favor, *see Hassan*, 578 F.3d at 126, a reasonable jury could have convicted Fishbein based on the evidence presented at trial.

The Court's instructions as to both counts were the same in all relevant respects. To meet its burden on the wire fraud charge, "the government must prove . . . there was a scheme or artifice to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises . . . [and] that the defendant knowingly and with the intent to defraud devised or participated in a scheme or artifice." Trial Tr. at 1240. The Court instructed the jury that for the relevant counts, it must find that Fishbein's conduct was intentional. *See id.* at 1244–46, 1249. The Court also underscored that because an essential element of the crime was intent to defraud, "good faith" was a "complete defense" and that an "honest belief in the truth of" Fishbein's representations was "a complete defense, however inaccurate the statements may turn out to be." *Id.* at 1244–45, 1248–50; *see also United States v. Hild*, --- F. Supp. 3d ---, 2022 WL 17484992, at *10 (S.D.N.Y. Dec. 7, 2022) (describing good faith defense to fraud).

Drawing all inferences in its favor, the Government presented sufficient evidence for a rational jury to conclude that Fishbein knowingly misrepresented to the Agencies that he was the owner of the Properties and that he did not believe himself in good faith to be the owner and landlord. First and foremost, Fishbein's own testimony undermined any good faith defense. Fishbein did not deny that he received hundreds of thousands of dollars in payments from the

Agencies. *See, e.g.*, Gov. Ex. ("GX") 1407. Instead, throughout trial, Fishbein attempted to blame any fraud or forgery on three "Characters"[5] who he claimed provided him with the Properties' sale and transfer documents, were present at the closings with him, and with whom he did "quite a few deals." *See* Trial Tr. at 762–70, 794, 837, 969–74. Fishbein likewise confirmed that his signature was "all over" the transfer paperwork. *Id.* at 943–44. Fishbein also admitted that he knew that the Characters did not have a legal title company; that at least some of them had been arrested for deed fraud in 2014; and that one individual was convicted for "crimes relating to deed fraud" in 2015. *Id.* at 745, 970, 1042.

Despite knowing that the Characters were directly implicated in forging deeds, Fishbein continued to hold himself out as the owner and landlord of the Properties and relied on deeds they provided him to collect payments from the Agencies. *Id.* at 973. In an apparent attempt to distance himself from the Characters' malfeasance, Fishbein claimed that he stopped doing "business" with them after they were arrested. *Id.* at 838, 970. Indeed, Fishbein claimed he "kept [his] distance" from them after he learned about their arrest. *Id.* at 1054. This argument fell apart on cross-examination though when seconds later Fishbein admitted that he contacted one of the Characters after the individual got out of jail. *Id.*

Fishbein further maintained that he did not know *his* deeds were forged or that he was anything other than the lawful owner of the Properties because the Characters were not charged with forging the Properties' deeds, but rather were charged with forging deeds related to *other* real estate transactions.[6] *Id.* at 971. Construing all inferences in the Governments' favor, however, a

---

[5] The "Characters" were three individuals not on trial or otherwise formally implicated in the charges brought against Fishbein.

[6] At trial, Fishbein acknowledged that he now understands at least some of the deeds he submitted to the Agencies were fraudulent. *See, e.g.*, Trial Tr. at 942.

jury was entitled to reject Fishbein's good faith defense because Fishbein's deep involvement with the material steps involved in the Properties' deed transfers—including going to the straw closings, signing forms himself, and paying not the owner but one of the Characters—indicated he knew the transactions were fraudulent and likewise knew he was not the owner and landlord of the Properties when he rented them out through the Agencies programs.[7]

Nor was Fishbein's testimony the only evidence presented at trial. The jury also heard testimony from three witnesses—two who were owners of the Properties and a third who was the son of an owner—that they did not sign the deeds purporting to transfer their Properties to Fishbein. *See id.* at 216–17, 267–70, 400–05. They all testified that they did not know Fishbein, let alone that they ever sold their Properties to him. *Id.* One owner even testified that he learned that new tenants were living in his Property after he visited it and found different tenants there who said it was rented to them by a "Mr. Paul." *Id.* at 210–11. When the owner contacted this Mr. Paul and told him that the Property was his and Mr. Paul had no right to rent it out, Mr. Paul threatened him and said that if the owner came to the Property again, he was "going to be in big trouble." *Id.* at 211.

Two owners also sued Fishbein seeking to strike Fishbein's "deeds" purporting to transfer their Properties to him. *Id.* at 271, 275–76, 394–95. Although one lawsuit was pending at the time of trial, a court entered default judgment in the other against Fishbein, a fact he was aware of. *See*

---

[7] Indeed, a jury could reasonably conclude—at the very least—that Fishbein was aware of a high probability that he was not the owner yet consciously avoided confirming that fact. *See United States v. Wedd*, 993 F.3d 104, 118 (2d Cir. 2021). A jury therefore could rationally find that Fishbein had culpable knowledge that he was not the landlord/owner because the evidence demonstrated he intentionally avoided confirming ownership. *Id.* at 119–20; *see also* Trial Tr. at 1264–65.

*id.* at 397, 1067. Yet Fishbein continued to collect rental payments on the Property, despite knowing that a court had struck his deed from the city register. *Id.* at 899–901.

Finally, there was ample additional evidence establishing Fishbein's knowing misrepresentation. Fishbein failed to list the Properties or the money he collected from them on his tax returns and Medicaid paperwork; a jury could rationally infer that he attempted to hide his connection to them to avoid detection. *See id.* at 979–88, *compare* GX 1705 *with* GX 1408. Three notaries whose name and information appeared on some of the falsified deeds likewise testified that they never notarized them. *See* Trial Tr. at 306–13, 330–32, 441–42.

Importantly, the deeds themselves facially contained serious red flags. Some of the Properties had multiple deeds transferring the Properties back and forth between Fishbein and the true owner, with each deed containing a different social security number for the true owner. *Id.* at 942, 952–55; GX 204. Some of the deeds likewise lacked contracts of sale. *Id.* at 902. Transfer paperwork also listed sale prices of $0, $100, or $1,000, compared to the hundreds of thousands of dollars the Properties sold for just a few years prior. *See* GX 101, 116, 121, 122. Fishbein attempted to explain this obvious discrepancy by claiming that he actually paid approximately $20,000 in cash for the Properties and that he bought them assuming all liens and encumbrances. *See* Trial Tr. at 749, 893, 916–19. This claim, however, was in direct conflict with the sale prices listed on the deeds and was unsupported by any evidence, including mortgage, bank or any other documents memorializing his purported assumption. At the very least, this claim demonstrated Fishbein's willingness to sign and certify the accuracy of documents he knew were incorrect.

The evidence recounted above includes only a portion of the total evidence the Government presented. After reviewing the record, the Court can comfortably say that a reasonable jury could

have determined that Fishbein knowingly misrepresented that he was the owner and landlord of the Properties.

The evidence also established that Fishbein acted with the requisite fraudulent intent to support a conviction on Counts One and Two. As noted above, a rational jury was entitled to reject Fishbein's claim that he did not know he was the owner of the Properties when he submitted applications for rental subsidies through the Agencies. This evidence establishes not only that Fishbein misrepresented his ownership but that he intentionally and falsely claimed to be the owner of Properties he knew or should have known had been stolen from their owners to receive money from the Agencies and that he did, in fact, receive money from them. *See, e.g.*, GX 200–36, 1407.

There was also substantial evidence that Fishbein requested and deposited brokers' fees payments, despite never using a broker in connection with renting out the Properties. *See, e.g.*, GX 210, 224, 228, 1405, 1406; Trial Tr. at 196, 216, 287–88, 992–995.[8] Fishbein admitted that "there was an agreement between [himself], [Erica] Yitzhak, and [his] ex-wife where [Fishbein] would say Ms. Yitzhak worked as a broker in renting out a property when she didn't." *Id.* at 996; *see also id.* at 824. He also conceded that he was the one who filled out the voucher forms using Yitzhak's name and license number and that he signed her name. *Id.* at 992–95.

Fishbein's only defense was that his ex-wife—who occasionally worked as a broker for real estate rentals—and Yitzhak was complicit in the fraud. Regarding the first, a jury was entitled

---

[8] The brokers' fees forms require that the listed broker "is not the owner, controlling person, or an affiliate of the owner of the actual rental unit" and that failure "to provide true and accurate statements is punishable" as a misdemeanor under New York state law. GX 224. Fishbein also acknowledged that, as the alleged landlord/owner, he was "not the broker nor in any way associated with the Agency charging a broker's fee for the procurement of" the property and that he agreed that he would "not receive any part or all of the Broker's fee directly or indirectly from the Broker" and that he would "not rent the premises without the service of" the stated brokerage firm. GX 1405.

to reject Fishbein's attempt to implicate his ex-wife, who never testified at trial, because it was Yitzhak's name and information that was listed as the broker. And while Fishbein's ex-wife's phone number was occasionally listed on some of the paperwork as the broker's phone number, Fishbein himself testified that this was because she was complicit in the fraud. *Id.* at 824; *see also* GX 1405 (requiring landlord to affirm that he was not "in any way associated with" broker requesting the fee).

A rational jury could likewise reject his claims that Yitzhak was complicit. Yitzhak testified she neither knew about this plan nor gave Fishbein permission to use her name, her firm's name, or her broker's license in connection with the requests. *Id.* at 505–06. She likewise denied that she ever served as a broker. *Id.* Credibility determinations are "the province of the jury and not of the court," *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotation marks omitted), and the Court must therefore "resolve all issues of credibility in favor of the jury verdict." *Jones*, 965 F.3d at 193. A rational jury was free to credit Yitzhak over Fishbein, particularly because Fishbein was the one who signed and cashed the brokers' fee check (issued to Yitzhak's brokerage firm) and because three of Fishbein's tenants testified that they never used a broker in finding the Properties. *See, e.g.*, Trial Tr. at 196, 216, 287–88; GX 328, 1406. All in all, a rational jury could permissibly conclude that based on the totality of the evidence, that Fishbein intended or contemplated harming the Agencies by collecting payments he was not otherwise entitled to.

Fishbein's primary focus on an absence of fraudulent intent is only on one aspect of the wire and mail fraud counts: the rental subsidy payments. He claims that the trial testimony established only that "the Agencies would not have otherwise done business with Mr. Fishbein had he not been the owner of the Properties." Def. Br. at 11, ECF No. 122. But this completely

misstates what the Agencies' representatives testified.   Contrary to Fishbein's characterization, they did not merely claim that they *would* not have done business with Fishbein had he known he was not the owner/landlord of the Properties.   Rather, the Agencies' representative clearly and unequivocally stated that they *could* not have paid him because "[o]nly the landlord is entitled to receive the money in the subsidy." Trial Tr. at 45.[9]  This goes beyond mere buyer's remorse: a rational jury could have concluded that by holding himself out as the owner and landlord of the Properties to deprive the Agencies of money that Fishbein "contemplated or intended . . . some harm" to their monetary interests. *Autuori*, 212 F.3d at 116; *see also United States v. Berger*, 224 F.3d 107, 112, 117 (2d Cir. 2000) (observing that proof at trial established that defendant fraudulently obtained Section 8 rent payments as a landlord by misrepresenting his ownership of rental property).

At bottom, "a jury may bring to its analysis of intent on individual counts all the circumstantial evidence it has received on the scheme and the purpose of the scheme in which the defendant allegedly participated." *Guadagna*, 183 F.3d at 130.  Nor need the government "exclude every reasonable hypothesis other than that of guilt" when making a case premised on

---

[9] This testimony was repeated throughout trial.  The same witness reiterated that "the landlord is the only person that's entitled to the rental subsidy." Trial Tr. at 57.  And, as another explained:

> A: [The landlord] is required to provide . . . proof of ownership by providing a deed . . . .
>
> Q: What is the purpose of the landlord providing a deed?
>
> A: It's to establish that the payments that we're making on behalf of the client are going to the legitimate owner of the property.
>
> Q: And why is that important?
>
> A: That is because that's who should be getting paid.

*Id.* at 99–100.

circumstantial evidence. *Holland v. United States*, 348 U.S. 121, 139 (1954). Because the evidence of fraudulent intent is not "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt," *Guadagna*, 183 F.3d at 130 (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)), the verdict on Counts One and Two must be upheld.

### ii.  *Count Three*

Fishbein claims that he is entitled to a judgment of acquittal on Count Three because the Government failed to "rebut the inference that" Fishbein believed in good faith that he was the owner of the Properties. Def. Br. at 11. This argument fails for the same reasons discussed above.

### iii.  *Count Four*

Finally, Fishbein maintains that there was insufficient evidence to support his conviction for aggravated identity theft because the Government failed to establish beyond a reasonable doubt that Fishbein used Yitzhak's broker's license without her permission or that his use was in furtherance of a fraudulent scheme. Neither argument has merit.

"Section 1028A(a)(1) applies when a defendant, 'during and in relation to any [predicate offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.'" *Dubin v. United States*, 599 U.S. ---, 143 S. Ct. 1557, 1563 (2023) (quoting 18 U.S.C. 1028A(a)(1) (alteration in original)). Pursuant to the trial indictment stipulated to by the parties, the aggravated identity theft charge was predicated on the wire and mail fraud charged in Counts One and Two. *See* Gov't Opp'n at 2, ECF No. 124; *see also* 18 U.S.C. § 1028A.

Drawing all inferences in the Government's favor, a jury could rationally conclude beyond a reasonable doubt that Fishbein used Yitzhak's name without her authorization to fraudulently

receive brokers' fees. Fishbein's purported defense was that Yitzhak was a willing participant in the fraud, as evidenced in part by the fact that she repeatedly sent Fishbein copies of her broker's license. *See* Trial Tr. at 824. Although Yitzhak acknowledged that she had sent Fishbein the copies, defense counsel asked her directly whether she sent the copies because Fishbein "was permitted to use [Yitzhak's] license in connection with obtaining broker's fees for rental subsidies . . . ." *Id.* at 567. Her answer was a resounding "no." *Id.*; *see also Dubin*, 143 S. Ct. at 1568 n.6, (noting that stealing in Section 1028A context "can, of course, include situations where something was initially lawfully acquired"). Fishbein's argument that Yitzhak was incredible because, despite her adamant denial, she was unable to recall exactly why she would have sent Fishbein her information offers him little comfort because credibility determinations are reserved to the sound discretion of the jury. *See O'Connor*, 650 F.3d at 855. Drawing all inferences in the Government's favor, a jury could rationally conclude that Fishbein used Yitzhak's identity without her consent to receive brokers' fees from the Agencies.

Fishbein also claims that the Government failed to demonstrate that his use of her identity was in furtherance of the wire and mail fraud. This argument merits little consideration: Fishbein admitted he put down Yitzhak's name on his broker fee requests forms to obtain the fees for his benefit. *See* Trial Tr. at 994–95. This is exactly the fraudulent conduct alleged in Counts One and Two and a jury could comfortably conclude that Fishbein used Yitzhak's name and that this use was "the crux of what makes [Counts One and Two] criminal." *Dubin* 143 S. Ct. at 1563; *see also United States v. Wedd*, 993 F.3d 104, 123 (2d Cir. 2021).

## II.    Rule 33 Motion

### A.   Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure permits a court, upon motion by the defendant, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed.

R. Crim. P. 33(a).  The bar for granting a Rule 33 motion is a high one, and a court will order a new trial "only in 'extraordinary circumstances.'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997)).  While the decision to grant a Rule 33 motion rests in the district court's discretion, "[t]he defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'" *Id.* (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).  "The 'ultimate test' is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (cleaned up) (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005)).

A Rule 33 motion is not an opportunity for the district court to alter its general posture of deference "to the jury's resolution of conflicting evidence and assessment of witness credibility." *McCourty*, 562 F.3d at 475.  "[T]he trial judge's rejection of all or part of the testimony of a witness or witnesses does not automatically entitle a defendant to a new trial." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).

"[W]hen a defendant's motion for a new trial is based on the court's evidentiary rulings, the relevant inquiry is not whether those evidentiary rulings were wrong but whether they amounted to a 'manifest injustice.'" *United States v. Udeokoro*, 17-CR-629 (AMD), 2023 WL 4138477, at *6 (E.D.N.Y. June 22, 2023) (quoting *United States v. Aiyer*, 470 F. Supp. 3d 383, 410 (S.D.N.Y. July 6, 2020), *aff'd*, 33 F.4th 97 (2d Cir. 2022)).  "A district court must 'defer to the jury's resolution of conflicting evidence,' unless the evidence was 'patently incredible or defied physical realities,' or an 'evidentiary or instructional error compromised the reliability of the verdict.'" *United States v. Petit*, No. 19-CR-850, 2021 WL 673461, at *7 (S.D.N.Y. Feb. 21,

2021), *aff'd*, No. 21-543, 2022 WL 3581648 (2d Cir. Aug. 22, 2022), (quoting *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020). As with a Rule 29 motion, "a district court faced with a Rule 33 motion must be careful to consider any reliable trial evidence as a whole, rather than on a piecemeal basis." *Archer*, 977 F.3d at 189 (citing *United States v. Middlemiss*, 217 F.3d 112, 117 (2d Cir. 2000)).

## B. Sufficiency of Evidence Supporting Counts One through Four

Courts "review sufficiency challenges raised in a new trial motion in the same fashion as those brought in motions for judgments of acquittal." *United States v. Encarnacion*, No. 13-CR-JSR, 2015 WL 756702, at *1 (S.D.N.Y. Feb. 17, 2015) (quoting *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997)). To the extent Fishbein moves pursuant to Rule 33 for a new trial based on the insufficiency of the Government's evidence, the Court rejects his arguments for the same reasons it denies his Rule 29 motion. *See United States v. Kissi*, 21 Cr. 64 (PAC), 2022 WL 4103640, at *6 (S.D.N.Y. Sept. 8, 2022).

## C. Purported "Defenses"

Fishbein next argues that he is entitled to a new trial because the Court erred in preventing him from arguing that the Agencies' continued payments evidenced his good faith and that the Agencies "have gotten and are still getting exactly what they bargained for." Def. Br. at 22. Neither is an available defense. Regarding the first, courts within the Second Circuit "have precluded defendants from arguing that the payment of claims demonstrates a defendant's good faith and lack of intent." *Udeokoro*, 2023 WL 4138477, at *7. The Court correctly disallowed Fishbein from arguing that any fault or negligence on the part of the Agencies could serve as a defense to his fraudulent conduct.

The Court likewise did not err in rejecting that Fishbein could claim as a defense that the Agencies received the "benefit of the bargain." As the Court previously noted, Counts One and

Two are premised on the "Agencies g[iving] Fishbein far more than they had bargained for." *Fishbein I*, 2022 WL 1188424, at *3. Further, the "benefit of the bargain" cases Fishbein relied on in his pre-and post-trial briefing have no application here.[10]   Those cases "involve misrepresentations made as part of a sales pitch or contract negotiation. In such circumstances, a court must determine whether the misrepresentation goes to a core element of the parties' agreement – typically a matter that relates to the quality or nature of the product or service at issue." *United States v. Pierre*, 22 Cr. 20 (PGG), 2023 WL 4493511, at * 13 (S.D.N.Y. July 12, 2023) (rejecting that benefit of the bargain was available defense when medical clinics misrepresented ownership status to submit no-fault insurance claims for rendered services). Fishbein's false claims of ownership and eligibility, by contrast, have absolutely nothing to do with the "quality, adequacy or price of goods to be sold." *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970).  There was no negotiation—nor could there be—between the Agencies and Fishbein about whether someone falsely claiming to be a landlord or a broker could obtain payments from the Agencies nor did the Agencies have any discretion to continue paying someone who was not the lawful landlord or broker. *See* Trial Tr. at 45, 57, 100–01; GX 228, 1405.  Rather, "a misstatement about . . . ownership, if made with the intent to deceive [the Agency] into making payment it would otherwise withhold, is a misstatement made with the intent to cause injury to the [Agency]." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 448 (S.D.N.Y. May 20, 2013).

Finally, to the extent Fishbein relies on cases brought under the now-defunct, *see Ciminelli v. United States*, 598 U.S. ---, 143 S. Ct. 1121 (2023), "right to control" fraud theory,[11] both the

---

[10] *See, e.g.*, Def. Br. at 21–22, ECF No. 122; Def. Reply at 6, ECF No. 127.

[11] *See, e.g.*, Def. Br. at 21–22.

Court and the Government have repeatedly emphasized that the wire and mail fraud charges against Fishbein are not brought under a right-to-control theory, but rather were premised on a straightforward allegation that Fishbein fraudulently obtained money he was not entitled to. *See* Superseding Indictment; *see also Jabar*, 19 F.4th at n.60 (noting that criminal indictment specifically charged that fraud was premised on depriving victim of the "benefit of the bargain" and that the theory was separate but "closely related" to the "right to control" theory of fraud). The Court's decision was not in error and no new trial is warranted.

    D.  <u>Severance and Constructive Amendment</u>

Fishbein also attempts to relitigate his arguments that (1) the Court erred in denying his motion to sever Count Five and (2) that the Government constructively amended the Superseding Indictment by arguing in summation that the jury could convict on Counts One and Two based on the rental subsidy payments and/or the brokers' fee payments. His arguments mimic almost verbatim those duly considered and rejected by the Court and fail to raise even a colorable argument warranting reconsideration. *See generally Fishbein II*, 2023 WL 2734428; Order, ECF No. 119.

To reiterate, severance of Count Five was not warranted, *see* Fed. R. Crim. P. 8(a), because the relevant conduct in all five counts is adequately related: Fishbein committed the Medicaid fraud in part by failing to disclose income generated through the conduct alleged in Counts One through Four. *See United States v. Khandakar*, 955 F. Supp. 2d 268, 270–71 (S.D.N.Y. 2013). Nor did Fishbein's decision to testify in his own defense warrant severance, *see* Fed. R. Crim P. 14(a), because Fishbein's false statements regarding his Medicaid benefits bear on more than his credibility, *see United States v. Aldi*, 101 F.3d 682, 1996 WL 1929969, at *2–3 (2d Cir. 1996), and

could be used to infer, *inter alia*, that he knew he was not the lawful owner or landlord of the Properties.

There likewise was not constructive amendment. The Government did not "offer[] proof of offenses or transactions not even mentioned in the indictment" and "all of the transactions the government ultimately proved at trial were contained in the indictment." *United States v. Berger*, 224 F.3d 107, 117–118 (2d Cir. 2000). And, to the extent Fishbein now alleges that the jury's general guilty verdict on Counts One and Two is "unconstitutionally unclear," Def. Br. at 16, this argument is meritless. "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970); *see also United States v. Bell*, 584 F.3d 478 (2d Cir. 2009) (describing "historical preference for general verdicts" in criminal cases (quoting *United States v. Coonan*, 839 F.2d 886, 891 (2d Cir. 1988)). As the Court noted above and the Government argued at trial, there was ample evidence on which a jury could convict Fishbein for both the rental subsidy and brokers' fee payments.

E.  Samuel and Yitzhak Testimony

Finally, the Court rejects Fishbein's arguments that it improperly curtailed his cross-examination of defense witnesses Aaron Samuel and Erica Yitzhak. Under the Sixth Amendment's Confrontation Clause, "a criminal defendant must have a meaningful opportunity to cross-examine witnesses against him." *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014) (internal quotation marks and citation omitted). The Confrontation Clause, however, is not limitless. Rather, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Robinson*, No. 16-CR-0545, 2021 WL 62076, at *18

(E.D.N.Y. Jan. 6, 2021) (emphasis in original) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). The Court maintains "broad discretion to impose reasonable limits on cross examination based on concerns about harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant." *Alvarez*, 763 F.3d at 230 (cleaned up) (quoting *Brinson v. Walker*, 547 F.3d 387, 394 (2d Cir. 2008)).

Fishbein claims that the Court improperly curtailed his ability to cross-examine Samuel regarding Samuel's relationship with a third-party entity Purpose to Serve Inc. Where the Court limited Samuel's testimony, it did so because it would have elicited improper hearsay, marginally relevant responses, or answers that were otherwise inadmissible. The Court is particularly perplexed as to why Fishbein now alleges that he was prevented from asking Samuels about his prior (potentially inconsistent) statements to the Government regarding a Purpose to Serve employee's role in fraudulently conveying one of the Properties given that defense counsel never actually asked Samuels about these statements to the Government. *See* Trial Tr. at 416–417, 422–24.

The Court also did not err in limiting Fishbein's cross-examination of Yitzhak regarding her role in unrelated civil lawsuits with former clients where all but one resulted in findings of no liability. That Yitzhak may have had disputes with her former clients is not probative of Fishbein's guilt or lack of guilt or Yitzhak's credibility and could have easily confused the jury and wasted time by diverting attention from evidence relevant to Fishbein's conduct to the details of Yitzhak's unrelated behavior. The Court allowed Fishbein ample opportunity to cross-examine Yitzhak and defense counsel robustly tried to discredit and impeach her on relevant issues. In any event, even if the Court's rulings on cross-examination were in error, it would not justify granting a new trial

because, as discussed above, the Government's case "was exceedingly strong." *See United States v. Viera*, 14-cr-83 (ER), 2021 WL 1320891, at *6 (S.D.N.Y. Apr. 8, 2021).

After considering all facts and circumstance of the 'entire case, the Court is not concerned that letting Fishbein's guilty verdict stand would be a manifest injustice, *see Ferguson*, 246 F.3d at 134, or that "an innocent person may have been convicted," *Sanchez*, 969 F.2d at 413. He is not entitled to relief.

## CONCLUSION

For the foregoing reasons, Fishbein's Rule 29 and Rule 33 motions are **DENIED**. Fishbein's request for oral argument is denied. The Clerk of the Court is directed to close ECF No. 122.


Dated: New York, New York        SO ORDERED
      August 8, 2023

                                          PAUL A. CROTTY
                                          United States District Judge